NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| VICTOR McCARGO, : | |
| : | Civil Action No. 15-7163(RMB) |
| Petitioner : | |
| : | |
| v. : | **OPINION** |
| : | |
| PATRICK NOGAN, and : | |
| THE ATTORNEY GENERAL OF : | |
| THE STATE OF NEW JERSEY : | |
| : | |
| Respondents : | |
| : | |

**BUMB**, District Judge

This matter comes before the Court upon the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Pet., ECF No. 1) filed by Petitioner Victor McCargo ("Petitioner"), an inmate confined in East Jersey State Prison in Rahway, New Jersey. Respondents filed an answer opposing habeas relief (Answer, ECF No. 11), and Petitioner filed a traverse. (Traverse, ECF No. 12.) Respondents filed a reply to the traverse (Respondents' Reply, ECF No. 13), and Petitioner filed a sur-reply. (Petr's Sur-reply, ECF No. 14.) Pursuant to Federal Rule of Civil Procedure 78, the Court will determine the claims presented in the petition on the written submissions of the parties.

I.   PROCEDURAL HISTORY

Following a jury trial, on July 11, 1997, Petitioner was convicted of murder, felony murder, robbery, burglary, and firearms charges in the Superior Court of New Jersey, Law Division, Camden County. (Answer, ECF No. 11, Ex. Ra3, ECF No. 11-4) Petitioner was sentenced to life imprisonment with a 30-year term of parole ineligibility. (Id. at 6-7.)

Petitioner appealed. (Answer, ECF No. 11, Ex. Ra5, ECF No. 11-6.) The Appellate Division affirmed the conviction and sentence on November 21, 2000. (Id., Ex. Ra7, ECF No. 11-8.) Petitioner then filed a petition for certification in the New Jersey Supreme Court. (Id., Ex. Ra8, ECF No. 11-9.) The New Jersey Supreme Court denied the petition on March 14, 2001. (Id., Ex. Ra11, ECF No. 11-12.)

Petitioner filed a *pro se* PCR petition in May 2001, followed by *pro se* letter briefs in October 2002. (Id., Exs. Ra13, Ra14, Ra15, ECF Nos. 11-13, 11-14, 11-15.) Petitioner's attorney filed an amended petition on his behalf on April 7, 2006, followed by several briefs. (Id., Exs. Ra17, Ra16, Ra18, Ra19, ECF Nos. 11-17, 11-18, 11-19, 11-20.) Oral arguments were held before the Honorable Frederick J. Schuck on January 12, 2007. (Id., Ex. Rta15A, ECF No. 11-61.) The PCR court denied Petitioner's request for an evidentiary hearing and denied his petition on January 12, 2007. (Id., Ex. Ra22, ECF No. 23.)

Petitioner appealed the PCR court's decision. (Answer, ECF No. 11, Ex. Ra23, ECF No. 11-24.) On November 16, 2009, the Appellate Division reversed the PCR court and remanded because the court failed to address Petitioner's allegation of conflict of interest of one of his trial attorneys. (Id., Ex. Ra28, ECF No. 29.) Further, the Appellate Division held the PCR court should have conducted a hearing on whether counsel made a sound strategic choice not to pursue an intoxication defense. (Id. at 8.)

The Honorable Michele M. Fox presided over Petitioner's evidentiary hearing on PCR remand on November 14, 2011. (Id., Ex. Rta16, ECF No. 11-60.) On January 6, 2012, the PCR court denied relief. (Id., Exs. Rta17, Ra32, ECF Nos. 11-62, 11-33.) Petitioner appealed on May 31, 2012. (Id., Ex. Ra33, ECF No. 34.) On August 14, 2014, the Appellate Division affirmed. (Id., Ex. Ra38, ECF No. 11-39.) Petitioner filed a petition for certification with the New Jersey Supreme Court. (Id., Ex. Ra39, ECF No. 11-40.) The New Jersey Supreme Court denied the petition on December 5, 2014. (Id., Ex. Ra43, ECF No. ECF No. 44.) Petitioner filed the present habeas petition on September 21, 2015. (Pet., ECF No. 1.)

II. BACKGROUND

The factual background in this matter was summarized by the New Jersey Superior Court, Appellate Division upon Petitioner's direct appeal. (Answer, Ex. Ra7, ECF No. 11-8.)

Defendant's convictions were based upon the shooting death of Ronald Shaw on August 27, 1994 in a section of Camden, New Jersey known as Ablett Village. There was testimony during the course of the trial that Ablett Village was an area known for drug-trafficking and had been the scene of many shootings. Defendant admitted shooting Shaw, but maintained he acted in self-defense. Both men were in their early twenties at the time of the incident.

On the night in question, Shaw was visiting a friend of his, Elizabeth Pinto, who lived in Ablett Village. When he left and returned to his car, he saw that someone had attempted to break into it. Defendant was standing nearby; Shaw asked if defendant knew where "the little Spanish boy" was; defendant said he did not. Shaw drove off and returned a short while later, again looking for "the little Spanish boy." Defendant said Shaw retrieved a gun from the trunk of his car. Defendant said he asked Shaw if anything had been stolen from the vehicle and Shaw said nothing had. Defendant said he suggested that Shaw leave matters as they were but that Shaw insisted that someone "had to pay." Shaw got back into his car. He drove forward to where defendant was standing. Defendant said he feared for his life, and using a gun that a friend had given him earlier in the evening, opened fire. At least five .380 caliber bullets struck Shaw. Defendant looked into the car to see if he could see Shaw's gun but could not. Defendant fled the scene. After the shooting but before the police and ambulance arrived, the speaker and tape player were stolen from Shaw's car. No gun was recovered from Shaw's car during the subsequent investigation, but a live .9 millimeter cartridge was discovered on the front passenger seat.

More than a month later, defendant was apprehended in Syracuse, New York, where he had been staying with a cousin. He provided an inculpatory statement the trial court held admissible under Miranda v. Arizona, 384 U.S.

436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant testified at trial and repudiated that statement. He said he made the statement because the police were threatening to arrest his cousin for harboring a fugitive. He insisted to the jury he shot Shaw because he feared for his own life. By its verdict, the jury rejected defendant's testimony.

(Id. at 2-3.)

III. DISCUSSION

A. Standard of Review

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013)

(citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta" of the U.S. Supreme Court's decisions. Williams, 529 U.S. at 412. An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. Eley, 712 F.3d at 846 (quoting Renico v. Lett, 130 S.Ct. 1855, 1862 (2010)).

B.  Analysis

1.  Ground One

a.  The Parties' Arguments

In Petitioner's first ground for relief, he claims that he was subjected to an adverse conflict of interest at trial in violation of the Sixth Amendment. (Pet., ECF No. 1 at 25.) Petitioner alleges his former trial counsel, Jeffrey Klavens, testified that after he passed the New Jersey bar exam in June 1985, he was employed at both the Camden County Prosecutor's Office ("CCPO") and the Cumberland County Prosecutor's Office, where he remained until March 1997. (Id. at 25, ¶4.) During that time, Petitioner was arrested for Shaw's murder and indicted in Camden County in April 1995. (Id. at 26, ¶¶5,6.)

The CCPO prosecuted Petitioner, and he was convicted on June 10, 1997, and sentenced on September 5, 1997. (Id., ¶¶7-8.) Petitioner asserts Mr. Klavens was employed by the CCPO [and the Cumberland County Prosecutor's Office] at the time of Petitioner's

arrest, indictment, and certain pre-trial proceedings through March 1997. (Pet., ECF No. 1 at 26, ¶9.) Mr. Klavens joined Petitioner's defense team around April 20, 1997. (Id., ¶10.)

Mr. Klavens had filed a job application with the CCPO in December 1996. (Id., ¶11.) He interviewed with the CCPO while representing Petitioner in this case. (Id., ¶12.) Mr. Klavens did not disclose this conflict to Petitioner when he first joined his defense. (Id., ¶13.)

In support of an actual conflict between Mr. Klavens' interests and his own, Petitioner argues that (1) Mr. Klavens pursued self-defense over an intoxication defense without investigating intoxication first; (2) Mr. Klavens' failure to investigate intoxication led to his failure to advise Petitioner that self-defense was not applicable to the burglary and felony murder counts; he failed to present an intoxication defense in conjunction with self-defense; (3) Mr. Klavens objected to a jury charge that if the jury found imperfect self-defense, it could find Petitioner guilty of aggravated manslaughter or manslaughter; and (4) Mr. Klavens' failure to investigate caused him to give Petitioner faulty advice that self-defense would result in acquittal of first-degree murder, without advising that self-defense did not apply to burglary and felony murder counts that carried a life sentence. (Petr's Traverse, ECF No. 12 at 18-20.)

Finally, Petitioner claims that <u>Cronic</u> is the applicable law in his case because Mr. Klavens' representation amounted to a constructive denial of counsel because his representation was invalid from start to finish, and Mr. Klavens' divided loyalties prevented even the most able lawyer from providing meaningful assistance. (<u>Id.</u> at 22.)

Respondents contend the state court reasonably applied the <u>Strickland</u> standard to Petitioner's ineffective assistance of counsel claim based on conflict of interest, made a reasonable determination of fact that Klavens' job application to the prosecutor's office did not materially limit his representation of Petitioner, and that the Appellate Division and the New Jersey Supreme Court addressed Mr. Klavens' employment with the prosecutor's office. (Answer, ECF No. 11 at 48-49.) Respondents further contend <u>Cronic</u> is inapplicable because Petitioner was not denied counsel at a critical stage of the proceedings. (Answer, ECF No. 11 at 49.)

Respondents also note Mr. Klavens was one of two of Petitioner's defense attorneys, and not his primary counsel. (<u>Id.</u>) Mr. Klavens only joined the case on the verge of trial. (<u>Id.</u>) Petitioner did not challenge the allegiance of his other attorney, Mr. Kaigh. (<u>Id.</u>) The state courts addressed Petitioner's allegation of prejudice because Mr. Klavens failed to raise the intoxication defense, but the courts found Mr. Klavens was not

ineffective for not pursuing an intoxication defense, the only prejudice Petitioner asserted based on the conflict of interest. (Id.) Respondents assert Petitioner did not establish the prejudice prong of the Strickland test. (Id. at 51-52.)

a. The State Court's Decision

On habeas review, the district court must review the last reasoned state court decision on each claim. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). For Ground One of the petition, the last reasoned state court decision is the Appellate Division's review of the PCR remand decision. The Appellate Division explained that it had remanded to the PCR court because Petitioner raised the following claim in his pro se PCR petition, which his PCR counsel and the PCR judge failed to address:

> [T]he attorney who served as co-counsel at trial had a conflict of interest in that he had submitted an employment application to the prosecutor's office which was prosecuting defendant. In his papers, [defendant] alleged that co-counsel did not appear at sentencing because he was attending a job interview that day with the prosecutor's office. In our review of the record on appeal, we have noted that the trial transcripts indicate that co-counsel appeared every day of the trial except for the day of sentencing. The transcript for that day contains no mention of his presence.

[_Ibid._][1]

We concluded defendant's allegation in this regard "raise[d] troubling issues of conflict of interest which we [could] not disregard." _Id._ at 9. However, "[b]ecause there [was] no record on th[e] question, we [were] unable to conclude whether it [was] entirely devoid of merit or whether defendant [was] entitled to further relief." _Ibid._

. . .

… Judge Fox found that Klavens had sent out several resumes seeking employment in December 1996, one of which was sent to the Camden County Prosecutor's Office (CCPO), the same office that represented the State at defendant's trial, and for which Klavens had worked a decade earlier. Sometime during the week before trial commenced on May 20, 1997, Klavens was invited for an interview. Klavens contacted the CCPO and selected June 9, 1997 as the interview date, believing defendant's trial would be completed by then. Before the interview, the CCPO contacted Klavens and asked if he was willing to accept a position at the entry salary level, with a substantial increase the following year. Klavens responded by saying he was unwilling "to accept a position under those circumstances."

Klavens nevertheless intended to go to the interview, and he advised defendant of his intention on the morning of June 9, 1997. The transcript of the June 9 court session reveals that Klavens was present in court that day when the jury was charged and deliberated; he also was present when the judge responded to a jury question.

When he spoke with defendant, Klavens told his client that he was not accepting any position with the CCPO, and that the interview would

---

[1] See Nov. 21, 2000 App. Div. Opinion (Answer, Ex. Ra7, ECF No. 11-8.)

not affect his representation of defendant.
Klavens told defendant that the best thing he
(Klavens) could do to enhance his job
prospects would be to secure an acquittal for
defendant. According to Klavens, defendant
raised no concerns and found it humorous that
Klavens intended to turn down any entry level
offer. Klavens denied defendant's assertion
that he was absent from defendant's
sentencing, or that Klavens' pending
application and interview with the CCPO
"compromise[d] his representation of …
defendant."

Judge Fox noted that the situation did not
present a "per se conflict of interest," and
therefore, quoting State v. Norman, 151 N.J.
5, 25 (1997), the court must assess "'the
potential or actual conflict of interest'" and
"'if significant, a great likelihood of
prejudice must be shown … to establish
constitutionally defective representation of
counsel.'" Judge Fox observed that no reported
New Jersey decision was specifically on point.

. . .

The judge also noted that defendant failed to
"identify" how Klavans [sic] representation
was in any way "materially limit[ed]" by his
pending application and interview. She
concluded that Klavans [sic] had not committed
an ethical violation, that his application and
interview with the CCPO did not create a
conflict of interest that was likely to
prejudice defendant. She entered an order on
January 6, 2012, denying defendant's PCR
petition, and this appeal followed.

. . .

Defendant contends that, despite Judge Fox's
finding to the contrary, it was unlikely that
Klavens actually spoke to him about the
interview with the CCPO on June 9, and, in
fact the interview most likely occurred
earlier in the trial. Defendant claims there

was no "legitimate justification" why Klavens
waited to tell him of the interview, and the
delay indicates that Klavens was aware of "at
the very least, an appearance of impropriety."
Defendant contends there was "a substantial
likelihood of prejudice," once again citing
only Klavens' failure to raise the
intoxication defense.

In Norman, the court reaffirmed its earlier
holding in State v. Bellucci, 81 N.J. 531, 538
(1980).

> Belluci … created a two-tier system
> for evaluating conflict-of-interest
> claims, an approach to which we have
> continued to adhere. If a private
> attorney, or any lawyer associated
> with that attorney, is involved in
> simultaneous dual representations
> of codefendants, a per se conflict
> arises, and prejudice will be
> presumed, absent a valid waiver.
> Otherwise, the potential or actual
> conflict of interest must be
> evaluated and, if significant, a
> great likelihood of prejudice must
> be shown in that particular case to
> establish constitutionally
> defective representation of
> counsel.
>
> [Norman, supra, 151 N.J. at 24-25
> (citations omitted).]

Here, since there was no dual representation,
Judge Fox properly concluded there was no per
se conflict with presumed prejudice to
defendant.

. . .

In [State v.] Davis, [366 N.J. Super. 30], 40
[App. Div. 2004] we cited with approval the
district court's opinion in Essex County Jail
Annex Inmates v. Treffinger, 18 F.Supp. 2d 418
(D.N.J. 1998). The court there noted,

Because of the virtually limitless cases in which a "conflict" may theoretically arise when a lawyer's self-interest is implicated, there is a very real danger of analyzing these issues not on fact but on speculation and conjecture. Accordingly, when a conflict of interest arises based on a lawyer's self-interest, a sturdier factual predicate must be evident than when a case concerns multiple representation. Only by requiring a more specific articulation of the facts giving rise to a conflict situation can courts refrain from effectively "straightjacket[ing] counsel in a stifling, redundant … code of professional conduct." Supposition and speculation, therefore, will simply not do.

[Treffinger, supra, 18 F.Supp.2d at 432 (quoting Beets v. Scott, 65 F.3d 1258, 1270 (5th Cir. 1995), cert. denied, sub nom Beets v. Johnson, 517 U.S. 1157, 116 S. Ct. 1547, 134 L.Ed.2d 650 (1996)).]

. . .

Of course in this case, the issue presented did not involve competing interests of two clients, as was the case in In re Opinion No. 17-2012. The commentary to ABA Model Rule 1.7 recognizes that "when a lawyer has discussions concerning possible employment with … a law firm representing the opponent, such discussions could materially limit the lawyer's representation of the client." ABA Model Rule 1.7, comment 10.

However, as Judge Fox noted, the ABA Formal Opinion provides that "[a] possible conflict does not itself preclude the representation," and "[t]he critical questions are the

likelihood that a conflict will eventuate, and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that should reasonably be pursued on behalf of the client." Id. at 3-4. These two issues are informed by "two overriding factors," i.e., "the nature of the lawyer's role in the representation of the client; and the extent to which the lawyer's interest in the firm is concrete, and has been communicated and reciprocated." Id. at 4. "[I]f a lawyer has played a limited, but now concluded role for a client, there is ordinarily no basis for concluding that the lawyer's job search will prejudice the interests of the client …." Ibid.

. . .

We cannot conclude on this record that Klavens actually secured defendant's consent pursuant to former RPC 1.7(b). However, Judge Fox found that there was not a significant risk that Klavens' representation of defendant would be materially limited, because Klavans [sic] decided before going to the interview that he would not accept the position, if indeed one was offered. Moreover, defendant failed to establish the "great likelihood of prejudice," Norman, supra, 151 N.J. at 25, because the only specific, substantive claim of ineffective assistance was Klavens' failure to assert the intoxication defense, something Judge Fox already decided was not evidence of deficient performance. We agree with Judge Fox's analysis of the issue.

(ECF No. 11-39 at 5-7, 11-18) (alterations in original except [sic]) (footnotes omitted).

> b. Petitioner's claim that the State courts did not address Klavens' conflict of interest based on his prior employment with the CCPO

Petitioner contends that neither the Appellate Division nor the New Jersey Supreme Court addressed his argument that Klavens had a conflict of interest based on his prior employment with the CCPO. Apparently, Petitioner first learned that Mr. Klavens had worked for the CCPO when Mr. Klavens testified at the PCR remand evidentiary hearing about his job application with the CCPO. On November 14, 2011, Mr. Klavens testified:

> Q    Okay, Now, with respect to your New Jersey license, when did you first become licensed in New – in New Jersey to practice as an attorney?
> A    I passed the New Jersey Bar in June of 1985.
> Q    Okay, and where did you first work after – you passed the bar?
> A    I was employed by the company Camden County Prosecutor's Office from March of '85 until March of '87. And, then from March of '87 until March of '97, was with the Cumberland County Prosecutor's Office as an Assistant Prosecutor in both Camden and Cumberland.
> Q    Was that through March of '87?
> A    March of '87 through March of '97 – for 10 years in Cumberland and a couple of years in Camden before that.
> Q    Okay. And, then were you employed after March of '97 –
> A    Well, Mar—
> Q    Before you went back to the Cumberland office?
> A    March of '97 I hung out my own shingle and then worked for the law firm of  -- in Cherry Hill from October through the beginning of January or the end of December.

(ECF No. 11-60 at 4.)

This transcript shows Klavens did not testify that he worked for the CCPO from March 1987 through March 1997, as Petitioner contends, but rather that he worked for the Cumberland County Prosecutor's Office "in both Camden and Cumberland." PCR counsel did not question Mr. Klavens any further about this statement. Pursuant to 28 U.S.C. § 2254(e)(2), it is now too late to further develop the claim.

28 U.S.C. § 2254(e)(2) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> > (A) the claim relies on—
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The first issue that arises under § 2254(e)(2) is whether there has been a failure to develop the factual basis of a claim.

Prior to the PCR remand evidentiary hearing, Petitioner apparently was not aware of Mr. Klavens' employment history. The Appellate Division remanded to determine whether there was a conflict because Mr. Klavens had applied for employment with the CCPO before he joined Petitioner's defense, and he attended an interview during Petitioner's trial. Once the issue arose at the evidentiary hearing, Petitioner (through his counsel) failed to develop the issue by further inquiring about the nature of Mr. Klavens' employment relationship, if any, with the CCPO from the time Petitioner was indicted in April 1995 until March 1997.

Petitioner attempted to raise the issue for the first time on appeal of the PCR remand decision, but apparently because there was little in the record to support his claim that Mr. Klavens' prior employment presented a conflict, the Appellate Division gave the issue very little attention, stating only that it considered all of Petitioner's claims and rejected them.

> The "failure" inquiry [under § 2254(e)(2)] does not end once it is determined that the factual basis of a claim had not been developed in state court. Because "[i]n its customary and preferred sense, 'fail' connotes some omission, fault, or negligence on the part of the person who has failed to do something," "a person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance." Williams v Taylor, 529 U.S. 362, 431-32 [(2000)]. Accordingly, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless

> there is lack of diligence, or some greater
> fault, attributable to the prisoner or the
> prisoner's counsel." <u>Id.</u> at 432, 120 S.Ct.
> 1479.

<u>Thomas v. Varner</u>, 428 F.3d 491, 498 (3d Cir. 2005).

Here, the lack of diligence in further developing this claim is due to PCR counsel's failure to further question Mr. Klavens about his employment from March 1987 through March 1997. Additionally, Petitioner could have brought a second PCR petition based on what he learned at the PCR remand hearing, which, if permitted, would have allowed him another opportunity to question Mr. Klavens about this potential new conflict that arose based on his PCR remand testimony. Instead, Petitioner included this issue in his PCR remand appeal, although the issue had not been presented in his PCR petition.

Petitioner is not entitled to an evidentiary hearing on this matter pursuant to § 2254(e)(2) due to lack of diligence. Moreover, even assuming there was a potential conflict because Mr. Klavens had some type of employment relationship with the CCPO between March 1987 and March 1997, Petitioner still must show prejudice based on his ineffective assistance of counsel claim. As further discussed below, the state court reasonably found Petitioner did not establish prejudice.

      c. <u>Petitioner's claim that United States v.</u>
         <u>Cronic governs his conflict of interest claim</u>

Petitioner contends the clearly established Supreme Court precedent applicable to his ineffective assistance of counsel claim based on conflict of interest is United States v. Cronic, 466 U.S. 648 (1984). The factual scenario in Cronic was as follows:

> Respondent and two associates were indicted on mail fraud charges involving the transfer of over $9,400,000 in checks between banks in Tampa, Fla., and Norman, Okla., during a 4-month period in 1975. Shortly before the scheduled trial date, respondent's retained counsel withdrew. The court appointed a young lawyer with a real estate practice to represent respondent, but allowed him only 25 days for pretrial preparation, even though it had taken the Government over four and one-half years to investigate the case and it had reviewed thousands of documents during that investigation. The two codefendants agreed to testify for the Government; respondent was convicted on 11 of the 13 counts in the indictment and received a 25-year sentence.
>
> The Court of Appeals reversed the conviction because it concluded that respondent did not "have the Assistance of Counsel for his defence" that is guaranteed by the Sixth Amendment to the Constitution.

Id. at 649-50.

The Supreme Court noted "[a]bsent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." Id. at 658 (citations omitted). The Court, however, described several circumstances "that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is

19

unjustified." Id. Those circumstances include: (1) the complete denial of counsel; (2) where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; (3) where the petitioner was denied the right of effective cross examination; and (4) where "designation of counsel … was either so indefinite or so close upon the trial as to amount to a denial of effective and substantial aid in that regard." Cronic, 466 U.S. at 658-60. In those instances, "ineffectiveness was properly presumed without inquiry into actual performance at trial." Id. at 661.

Petitioner's case is not the type described by the Supreme Court in Cronic where surrounding circumstances justify a presumption of ineffectiveness without inquiry into counsel's actual performance at trial. Mr. Klavens was not actively representing conflicting interests when he joined Petitioner's defense. Mr. Klavens' role in the defense was to handle Petitioner's direct examination, the remainder of the defense was handled by lead defense counsel, Mr. Kaigh. Although Mr. Klavens had an employment application pending with the CCPO during Petitioner's trial, he testified that before the interview he had already decided not to accept the entry level salary that was being offered.

Mr. Klavens told Petitioner that the best thing he could do to enhance his job prospects was to obtain an acquittal. The trial transcript reflects that Klavens provided Petitioner with zealous

advocacy, making appropriate objections and requesting a mistrial. (Respondent's Brief, Ex. Rta9, ECF No. 11-53 at 122-67, Ex. Rta10, ECF No. 11-54 at 2-20; Ex. Rta11, ECF No. 11-55 at 6-11.) Mr. Klavens and Mr. Kaigh subjected the prosecution's case to meaningful adversarial testing. Thus, <u>Cronic</u> is inapplicable here.

The Supreme Court decision in <u>Mickens v. Taylor</u>, 535 U.S. 162 (2002) leads to the conclusion that <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) governs Petitioner's ineffective assistance claim based on the conflict of interest alleged here. In <u>Mickens</u>, the Court explained:

> In *Cuyler v. Sullivan*, 446 U.S. 335 [] (1980) the respondent was one of three defendants accused of murder who were tried separately, represented by the same counsel. Neither counsel nor anyone else objected to the multiple representation, and counsel's opening argument at Sullivan's trial suggested that the interests of the defendants were aligned. We declined to extend *Holloway*'s automatic reversal rule to this situation and held that, absent objection, a defendant must demonstrate that a conflict of interest actually affected the adequacy of his representation.

<u>Id.</u> at 168 (internal quotations omitted). In <u>Holloway v. Arkansas</u>, the Supreme Court held that prejudice is presumed when a court improperly requires joint representation of three codefendants over timely objections. 435 U.S. 475, 488 (1978).

In <u>Mickens</u>, the Supreme Court noted that Courts of Appeals had "unblinkingly" applied <u>Sullivan</u> to "all kinds of alleged

attorney ethical conflicts." 535 U.S. at 174 (citations omitted).
The Court stated,

> the language of *Sullivan* itself does not
> clearly establish, or indeed even support,
> such expansive application. "[U]ntil," it
> said, "a defendant shows that his counsel
> actively represented conflicting interests,
> he has not established the constitutional
> predicate for his claim of ineffective
> assistance." 446 U.S., at 350, 100 S.Ct. 1708
> (emphasis added). Both *Sullivan* itself, *see
> id.*, at 348-349, 100 S.Ct. 1708, and *Holloway*,
> *see* 435 U.S., at 490-491, 98 S.Ct. 1173,
> stressed the high probability of prejudice
> arising from multiple concurrent
> representation, and the difficulty of proving
> that prejudice.
>
> . . .
>
> The purpose of our *Holloway* and *Sullivan*
> exceptions from the ordinary requirements of
> *Strickland*, however, is not to enforce the
> Canons of Legal Ethics, but to apply needed
> prophylaxis in situations where *Strickland*
> itself is evidently inadequate to assure
> vindication of the defendant's Sixth Amendment
> right to counsel. *See Nix v. Whiteside*, 475
> U.S. 157, 165, 106 S.Ct. 988, 89 L.Ed.2d 123
> (1986) ("[B]reach of an ethical standard does
> not necessarily make out a denial of the Sixth
> Amendment guarantee of assistance of
> counsel").

Mickens, 535 U.S. at 175-76.

Mr. Klavens arranged the job interview with the CCPO for a
date when he thought Petitioner's trial would have ended. He had
already decided he would not accept an employment offer because
the salary was insufficient. These facts do not give rise to an
actual conflict of interest which requires greater protection of

the Sixth Amendment right to counsel than is provided by Strickland.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687–88. The measure of an attorney's performance is reasonableness, considering all circumstances, and under prevailing professional norms. Id. at 688. A defendant must overcome the presumption that counsel engaged in sound trial strategy. Id. at 689. "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." Grant v. Lockett, 709 F.3d 224, 232 (3d Cir. 2013) (quoting Harrington v. Richter, 131 S.Ct. 770, 785 (2011)). "Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." Id. (quoting Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011)).

"[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Strickland, 466 U.S. at 692. Prejudice can be presumed based on actual or constructive denial of counsel. Id.

To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." Id. at 695. In determining prejudice, a court must consider the totality of the evidence before the jury. Id.

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed." Id.

The Appellate Division's factual findings, adopting the factual findings of the PCR remand court, are reasonable because they are consistent with Mr. Klavens' testimony at the PCR remand hearing, which Judge Fox found credible. Petitioner did not establish clear and convincing evidence to the contrary.

The Appellate Division properly applied the Strickland standard for ineffective assistance of counsel to Petitioner's claim. The only prejudice Petitioner raised based on counsel's conflict of interest was that Mr. Klavens failed to present an

intoxication defense, either alone or in conjunction with self-defense.

The Appellate Division agreed with the PCR remand court's finding that there was no prejudice based on failure to raise an intoxication defense. This decision was reasonable because the record does not suggest that the intoxication defense would have been successful. Under New Jersey State law, a voluntary intoxication defense is only viable if it "negates an element of the offense." N.J. Stat. Ann. § 2C:2-8a. First degree murder requires that the actor purposely or knowingly causes death or serious bodily injury resulting in death. N.J.S. 2C:11-3(a)(1), (2). "[A] jury issue arises only if there exists a rational basis for the conclusion that defendant's "faculties" were so "prostrated" that he or she was incapable of forming an intent to commit the crime." State v. Mauricio, 117 N.J. 402, 418-19 (1990). One of the factors relevant to the issue is the actor's ability to recall significant events. Id. at 419.

The intoxication defense would have been contrary to Petitioner's testimony that he did not have anything to drink before the crime, although he was walking to and from a bar when the incident occurred. (Answer, Ex. Rta9, ECF No. 11-53 at 124.) Petitioner also testified that after going to the bar to buy beer to drink at a friends' house, he went to Mr. Plummer's house to get a gun because Mr. Plummer did not want to keep it in his house

around his children. (Id. at 124-27.) This is not consistent with a defense that Petitioner was so intoxicated he could not act knowingly or purposefully.

Petitioner was able to remember and testify in detail as to what occurred just before he shot the victim, including where people were standing and driving and what they had said. (Id. at 127-34.) And he recalled that after he shot the victim, he looked in the victim's car for a gun, and not seeing a gun, he fled to his mom's house. (Id. at 134, 172.) On his way home, he buried the gun he had used to shoot the victim, and the next day he retrieved the gun and threw it in the river. (Id. at 134.) These activities are also inconsistent with a person too intoxicated to act knowingly or purposely. Therefore, Petitioner did not establish prejudice under Strickland based on counsel's failure to raise the intoxication defense due to his conflict of interest. Ground One of the petition is denied.

      2.   Ground Two

         a.   The Parties' Arguments

In Ground Two of his petition, Petitioner contends his trial counsel provided ineffective assistance in violation of the Sixth Amendment by failing to thoroughly investigate the case and present an intoxication defense either in conjunction with self-defense or in lieu of self-defense. (Pet., ECF No. 1 at 30.) Although this Court has determined Petitioner did not show prejudice from

counsel's failure to raise intoxication as a defense, the Court will address the performance prong of Petitioner's Strickland claim under Ground Two of the petition.

When Petitioner raised this claim on PCR remand, he submitted his own affidavit and affidavits from trial counsel Jaime Kaigh, Betty McCargo, Dante McCargo, Arnold Lyles, two expert reports from Dr. Kenneth Weiss, and statements from Marcel Thomas and Dante McCargo to establish his intoxication on the night of the murder. (Pet., ECF No. 1 at 32, ¶13.)

Respondents contend the Appellate Division reasonably applied Strickland by finding counsel exercised reasonable trial strategy in not pursing an intoxication defense because it would have undermined self-defense. (Answer, ECF No. 11 at 45.) Respondents maintain the following factual findings are amply supported by the record. Mr. Klavens, Mr. Kaigh and Petitioner discussed the potential defenses of self-defense and intoxication. (Id. at 46.) Mr. Klavens explained that it was difficult to expect a jury to believe a person was acting with reasonable and necessary force in self-defense but was also so intoxicated that he was incapable of purposeful conduct. (Id.)

Further, self-defense was the better defense because it could be a complete defense to murder, aggravated manslaughter and manslaughter, while intoxication could only reduce the murder to aggravated manslaughter or manslaughter. (Id.) Although they could

be raised together, Mr. Klavens explained to Petitioner that raising intoxication takes away from the self-defense theory, and Petitioner agreed not to pursue an intoxication defense. (Id.) Additionally, Petitioner testified at trial that he did not consume any alcohol prior to 11:00 p.m., an hour before the shooting. (Answer, ECF No. 47, citing Rta9/9T123-16 to 124-14.)

In his traverse, Petitioner notes that on PCR remand he proffered that if Mr. Klavens had investigated intoxication as a defense, he could have obtained an expert report as to Petitioner's intoxication and diminished capacity; and he could have obtained affidavits and statements in support of his intoxication defense from Betty McCargo, Dante McCargo, Arnold Lyles, and Marcel Thomas. (Traverse, ECF No. 12 at 29.) Petitioner contends Mr. Klavens' lack of investigation resulted in his failure to realize that self-defense was not applicable to the burglary and felony murder counts. (Petr's Traverse, ECF No. 12 at 30.) Further, intoxication could have been used in conjunction with self-defense, and Mr. Klavens objected to the jury being charged on aggravated manslaughter based on an imperfect self-defense. (Id.) Petitioner contends this left him exposed to a life sentence for first-degree murder. (Id.)

Petitioner asserts he was prejudiced by Mr. Klavens' deficient performance because it reduced Petitioner's ability to fairly evaluate the plea offer by the State for "30 years, serve

15 years" because Mr. Klavens never apprised him that self-defense did not apply to burglary and felony murder, so he was still facing a life sentence even if self-defense was successful on first degree murder. (Traverse, ECF No. 12 at 33-34.) Mr. Klavens also rejected a jury instruction that would have allowed the jury an alternative to first-degree murder based on imperfect self-defense, which would have significantly reduced the sentencing exposure. (Id. at 34.)

Petitioner also challenges the state court factual determinations. (Id. at 37.) He asserts there is nothing in the record to support Mr. Klavens' testimony that he discussed self-defense or the intoxication defense with Petitioner. (Petr's Traverse, ECF No. 12 at 37.) Petitioner contends this testimony is belied by trial counsel Mr. Kaigh's certification that he did not discuss the possibility of raising an intoxication defense with Petitioner. (Id.)

Petitioner notes Mr. Klavens initially testified that he did not specifically discuss self-defense or intoxication with Petitioner, but at the evidentiary hearing years later he recalled discussing self-defense and intoxication with Petitioner during their second meeting when they reviewed discovery. (Id. at 38.) He asserts Mr. Klavens could never have reviewed discovery and discussed the defenses over one day when Mr. Kaigh had worked on

the case for two-and-a-half years yet never researched or explored the defenses. (Id.)

Respondents replied to Petitioner's assertions in his traverse. (Respondent's Reply, ECF No. 13.) First, Respondents contend there is support in the record that Mr. Klavens discussed the intoxication defense with Petitioner because Mr. Klavens testified to such and the PCR court found his testimony to be credible. (Id. at 2.)

Second, Respondents argue that Mr. Klavens' testimony is not belied by Mr. Kaigh's certification that he never discussed the possibility of raising an intoxication defense with Petitioner because Petitioner took Mr. Kaigh's statement out of context. (Respondents' Reply, ECF No. 13 at 3.) Mr. Kaigh stated that he "believe[d] he discussed the possibility of raising an intoxication defense with Klavens and he understood Klavens would discuss an intoxication defense with petitioner since Klavens was to conduct defendant's direct examination." (Id.)

Third, Respondents contend Petitioner misstated the record in claiming that Mr. Klavens testified he did not specifically discuss the concept of imperfect self-defense or intoxication with Petitioner. (Id.) Instead, Mr. Klavens testified to the following: (1) the defense could have raised intoxication but it would have hurt Petitioner's defense (RTA16 at 34); Mr. Klavens acknowledged that both self-defense and intoxication could be raised but he did

30

not think it was a good idea (Rta16 at 34); Mr. Klavens believed

if intoxication was presented to the jury it would reject self-

defense (Rta16 at 34-35); Defendant agreed not to use an

intoxication defense (Rta16 at 15); Mr. Klavens explained that he

and Mr. Kaigh discussed the defenses with Petitioner but at times

Klavens spoke to Petitioner alone and other times Mr. Kaigh was

present (Rta16 at 15); Mr. Klavens knew he discussed intoxication

with Petitioner and Mr. Kaigh separately. (Rta16 at 15.)

(Respondents' Reply, ECF No. 13 at 3-4.)

### b. The State Court's Decision

The highest state court decision on Ground Two is the

Appellate Division's review of the PCR Court's remand decision.

The Appellate Division addressed this claim as follows:

> We provide some background before turning to
> the events that followed our remand and led to
> the present appeal. Defendant's PCR petition,
> filed in 2001, was supported by a
> certification by Jaime Kaigh, Esq., from the
> Office of the Public Defender, "lead counsel
> during [the] pre-trial, trial and sentencing
> phases" of defendant's case. Kaigh further
> certified that he "believe[d] [he] discussed
> the possibility of raising an intoxication
> defense with Jeffrey Klavens, . . . who served
> as co-counsel…." Because Klavens handled the
> direct examination of defendant at trial,
> Kaigh believed Klavens would discuss the issue
> with defendant, and Kaigh had no recollection
> of ever speaking to defendant about "the
> possibility or feasibility of raising an
> intoxication defense this matter[,]" or
> discussing it with Klavens. In light of the
> certifications filed by defendant, his brother
> and a friend, we concluded that Kaigh's

31

certification alone was inadequate to determine, as the PCR judge had, that "counsel considered the issue and selected one avenue of defense over another." McCargo, supra, slip op. at 8.

. . .

On November 14, 2011, Judge Michele M. Fox, who was not the trial or PCR judge, conducted an evidentiary hearing on our remand. At the start, PCR counsel informed Judge Fox that he intended to call Klavens as his only witness and that after fully discussing the matter with defendant, it was defendant's decision not to testify at the hearing.

We synopsize Klavens' testimony, deferring as appropriate to the factual findings made by Judge Fox, and set forth in her oral opinion of January 6, 2012, from which we quote as necessary. See State v. Feaster, 184 N.J. 235, 278 (2005) (noting appellate courts defer to the factual findings made by the PCR judge following an evidentiary hearing when they are supported by adequate, substantial and credible evidence).

Judge Fox found Klavens to be a credible witness. Klavens was brought into the case by Kaigh and first met with defendant approximately three weeks before trial. He "carefully reviewed the discovery with his client, and … discussed with him the fact that asserting an intoxication defense would weaken and undermine [the] self-defense scenario[] suggested by … defendant's statement to police." Klavens also discussed with defendant "those aspects of discovery that would have been inconsistent with an intoxication defense[,]" and he also spoke to Kaigh about it. "[B]oth agreed that … that type of a defense would not be as feasible as a self-defense assertion."

Judge Fox concluded:

> based upon the testimony given by …
> Klavens under oath at the
> evidentiary hearing, as well as a
> review of th[e] file, that trial
> counsel adequately discussed the
> possibility of intoxication as a
> defense with co-counsel and …
> defendant, and only after such
> discussions with co-counsel and …
> defendant, an election was made to
> pursue a self[-]defense assertion.

(Answer, Ex. Ra38, ECF No. 11-39 at 4-5.)

The Appellate Division laid out the elements of an ineffective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668 (1984). (Id. at 8-10.) It then analyzed the claim:

> Defendant argues that trial counsel provided
> ineffective assistance because self-defense
> was not a viable defense, and intoxication,
> although not a complete defense, would have
> potentially negated the mental state necessary
> to have found defendant guilty of purposeful
> or knowing murder, or felony murder. This
> argument, however, is a textbook example of
> second-guessing the strategic decisions of
> trial counsel made after adequate
> investigation and preparation.
>
> At trial, defendant testified and explained
> that the victim had approached defendant and
> others armed with a gun. Although the victim
> left and entered his car, defendant believed
> he still had the gun and intended to use it.
> When the victim approached in his car and
> engaged defendant again, defendant shot first.
> At the remand hearing, Klavens explained that
> he did not pursue an intoxication defense
> because he believed the assertion of such a
> defense would undermine the self-defense
> claim. He further testified that he discussed
> this fully with defendant. As already noted,
> there was no other evidence adduced at the
> remand hearing, since defendant chose not to

33

> testify or produce any other witnesses. Under
> these circumstances, we concur with Judge Fox,
> who concluded that defendant failed to
> establish a claim of ineffective assistance of
> counsel on this point.

(Answer, Ex. Ra38, ECF No. 11-39 at 10-11.)

        c.    Analysis

The only evidence put forth at the PCR remand hearing was Mr. Klavens' testimony, which Judge Fox found credible. Petitioner now contests Mr. Klavens' testimony in his brief to this Court, however, he chose not to testify at the PCR remand hearing where he would be subject to cross-examination. None of Petitioner's arguments presented here establish by clear and convincing evidence, as required by 28 U.S.C. § 2254(e)(1), that Klavens did not discuss the reasons he believed they should not use an intoxication defense with Petitioner.

Petitioner asserts that it made no sense to use self-defense over intoxication because self-defense was not a defense to felony murder. Petitioner's argument completely ignores the fact that he presented a defense that he was not involved in the attempt to burglarize the victim's car before or after the victim was shot. (Answer, Ex. Rta11, ECF No. 11-55 at 115-16.)

In context, it made sense to pursue a complete defense to first degree murder (self-defense) and a complete defense to felony murder (that Petitioner did not commit an underlying robbery or burglary) rather than inviting a conviction on aggravated

34

manslaughter because he was intoxicated at the time he shot the victim. See Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2009) ("The deference accorded to counsel's reasonable strategic decisions can be seen in numerous United States Supreme Court rulings following on the heels of Strickland"; see State v. Perry, 590 A.2d 624, 636 (N.J. 1991) (counsel's decision not to pursue alternative defenses, including intoxication, where counsel believed defendant could prevail only by attacking reliability of confession was not constitutionally deficient representation.)

In hindsight, after the jury rejected self-defense, Petitioner regrets not accepting a plea or presenting an intoxication defense. "Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." See Strickland, 466 U.S. at 689. Counsel presented a sound strategical reason for favoring self-defense and for not weakening self-defense by introducing alternatives for the jury to consider. Therefore, Petitioner has not established the performance prong of the Strickland test for ineffective assistance of counsel. Ground Two of the petition is denied.

3. <u>Ground Three</u>

a. <u>The Parties' Arguments</u>

In Ground Three of the petition, Petitioner contends he was denied due process because the trial court's jury instructions concerning imperfect self-defense and passion/provocation manslaughter were generalized and incomplete. (Pet., ECF No. 1 at 33.) Petitioner testified that he shot the victim because he saw the victim with a gun, he thought the victim was about to shoot him, and he did not intend to kill the victim. (Pet., ECF No. 1 at 34, ¶4.) During a colloquy with the court, trial counsel asserted that Petitioner's testimony gave rise to imperfect self-defense and passion/provocation. (Pet., ECF No. 1 at 34, ¶5.)

Although the trial court instructed the jury on passion/provocation and imperfect self-defense, Petitioner contends the court failed to instruct that passion/provocation could be found based on excessive force as well as an honest but unreasonable belief in the need for force. (<u>Id.</u>, ¶6.) According to Petitioner, the court should have instructed that passion/provocation could be found where the defendant acted mistakenly as to "the amount of force called for to eliminate the danger." (<u>Id.</u> at 36, ¶8.) Thus, the jury had no choice but to convict Petitioner of murder if they believed he used excessive force. (<u>Id.</u>, ¶9.)

As to the court's jury instruction on imperfect self-defense, Petitioner argues that the court should have stated that a finding of imperfect self-defense might lead to a finding of aggravated manslaughter, but the court stated only that a finding of imperfect self-defense "could negate [] any finding that the petitioner acted knowingly or purposefully." (Pet., ECF No. 1 at 37, ¶17.) Petitioner claims the instruction that was given "did not allow the jury to even look beyond the first-degree purposeful or knowing murder to consider the lesser-included offenses, or to have the first-degree murder negated by reason of the passion/provocation or imperfect self-defense. (Pet., ECF No. 1 at 38, ¶21.)

First, Respondents assert this claim fails because matters of state law are not cognizable on habeas review, and the Appellate Division relied on state law in denying this claim. (Answer, ECF No. 11 at 59, 62.) Alternatively, Respondents argue the claim fails under federal law because imperfect self-defense and passion/provocation manslaughter are conflicting theories. (Id. at 59.) The New Jersey Supreme Court defined imperfect self-defense as the "honest but unreasonable belief" that a killer had to use force to protect himself." (Id. at 63-64.) Passion/provocation manslaughter, on the other hand, requires (1) the provocation is adequate to provoke a reasonable person; (2) the reasonable person did not have time to cool off between the provocation and killing; (3) the provocation must have impassioned the defendant; and (4)

the defendant did not cool off before the killing. (Id. at 64.)
Therefore, it is not logically possible to conclude imperfect self-
defense would lead to a finding of passion/provocation because
imperfect self-defense is an honest but unreasonable belief, and
passion/provocation is reasonable behavior. (Id.)

Respondents note that in discussing the jury instructions
prior to the jury charge, the court provided the imperfect self-
defense charge language, and the prosecutor noted the charge did
not tell the jurors that if they find an imperfect self-defense,
they could still find the defendant guilty of aggravated
manslaughter or manslaughter. (Id. at 61.) Defense counsel
responded that he liked the charge as it was, so the charge was
provided to the jury without the instruction that an imperfect
self-defense could lead to a finding of aggravated manslaughter.
(Answer, ECF No. 11 at 61.) The Appellate Division, citing state
law, found there was no reversible error in not charging imperfect
self-defense could result in a finding of aggravated manslaughter
or manslaughter. (Id. at 65.) Thus, Respondents assert the claim
is meritless. (Id.) Petitioner did not discuss Ground Three in his
Traverse.

b.    <u>The State Court Decision</u>

On direct appeal, the Appellate Division addressed this claim
as follows:

38

We reject defendant's argument that the trial court erred in its instructions about imperfect self-defense and passion/provocation manslaughter. The main thrust of defendant's argument is that the trial court erred when it did not tell the jury that a finding that defendant's conduct constituted imperfect self-defense could lead to a verdict of passion/provocation manslaughter.

We have reviewed the entirety of the court's charge, for the charge must be reviewed as a whole. State v. Wilbely, 63 N.J. 420 (1973). Within its charge, the trial court instructed the jury on murder, passion/provocation manslaughter, aggravated manslaughter, reckless manslaughter, self-defense, and imperfect self-defense. Not only do we fail to see plain error, defendant not having interposed this objection below, R. 2:10-2, we consider the instructions on the charge of murder to be balanced and fair. As the State points out, there is a fundamental inconsistency between the analytical foundations of imperfect self-defense, which rests upon an honest but unreasonable response to a perceived danger (State v. Bowens, 108 N.J. 622 (1987) and passion/provocation manslaughter, which rests upon a finding that the provocation was such as to reasonably engender the response. State v. Mauricio, 117 N.J. 402 (1990).

Defendant also asserts reversible error in the trial court's failure to tell the jury explicitly that a finding of imperfect self-defense could lead to a verdict of aggravated manslaughter, as opposed to murder. When the issue was raised with the trial court, however, defense counsel indicated they did not want such a provision included in the charge. We do not consider the omission reversible error. State v. Logan, 262 N.J. Super. 128, 132 (App. Div.), certif. denied, 133 N.J. 446 (1993); State v. Harper, 128 N.J.

Super. 270, 277 (App. Div.), <u>certif. denied</u>,
65 <u>N.J.</u> 574 (1974).

(Answer, Ex. Ra7, ECF No. 11-8 at 5-6.)

c.  <u>Analysis</u>

Jury instructions on the charges against a defendant in state court are governed by state law. <u>See Estelle v. McGuire</u>, 502 U.S. 62, 71-72 (1991) (fact that jury instructions were allegedly incorrect under state law is not a basis for habeas relief.) However, a defendant may challenge jury instructions on habeas review if the instructions "violated some right which was guaranteed to the defendant by the Fourteenth Amendment." <u>Cupp v. Naughten</u>, 414 U.S. 141, 146. (1973.) The Supreme Court held that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." <u>Id.</u> at 146-47. Ultimately, the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." <u>Id.</u> at 147.

New Jersey law on imperfect self-defense is instructive here. In <u>State v. Coyle</u>, the New Jersey Supreme Court addressed whether, in a capital case, the trial court erred by refusing to provide a specific instruction on the theory of imperfect self-defense. 574 A.2d 951, 968 (N.J. 1990). The court held:

> Our decision in *State v. Bowens*, 108 *N.J.* 622,
> 532 *A.*2d 215 (1987), disposes of the claimed
> right to an imperfect-self-defense charge.
> There we held that "the Code of Criminal

40

> Justice does not provide an independent
> category of justification, excuse, or
> mitigation under the concept of imperfect
> self-defense." Id. at 626, 532 A.2d 215. The
> trial court need not charge separately that
> "imperfect self-defense would serve to reduce
> murder to an unspecified degree of
> manslaughter." *Id.* at 637, 532 A.2d 215; *see
> also State v. Pitts*, 116 *N.J.* 580, 605-06, 562
> *A.*2d 1320 (1989) (claim of imperfect self-
> defense does not mandate aggravated-
> manslaughter charge).

Coyle, 574 A.2d at 968.

Additionally, when a trial court instructs the jury on murder, aggravated manslaughter, passion/provocation manslaughter and reckless manslaughter, there is no need to charge the jury on imperfect self-defense. State v. Tierney, 813 A.2d 560, 571 (App. Div. 2003) (citing State v. Vasquez, 628 A.2d 346, 359 (App. Div. 1993)).

The Appellate Division reasonably concluded that the trial court gave proper jury instructions. The instructions permitted the jury to convict on any lesser included charge to murder depending on the state of mind that it found Petitioner to possess at the time of the shooting. Therefore, the jury instructions did not deprive Petitioner of a fundamentally fair trial in violation of his right to due process. See Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997) (for habeas relief on allegedly erroneous jury instructions a petitioner must show the instructions given "relieved the state of the necessity of proving an element of the

offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action.")

Petitioner's claim, that his right to due process was violated by the court's failure to instruct the jury that imperfect self-defense could lead to a finding of guilt on aggravated manslaughter instead of murder, also fails. Instructing the jury in such a manner was antithetical to the defense's goal of acquittal on the murder charge based on self-defense. See Vasquez, 628 A.2d at 359 ("Any instruction as to defendant's honest but unreasonable belief that he needed to use force would have placed him at the scene of the murder, thereby prejudicing the strategy chosen by defense counsel. Defendant never claimed that he had to use force.")

The instructions that were given to the jury permitted it to find guilt on a lesser charge based on imperfect self-defense or passion/provocation. Moreover, in closing argument defense counsel explained in context how imperfect self-defense and passion/provocation might apply in this case depending on the jury's factual findings. (Answer, Ex. Rta11, ECF No. 11-55 at 101, 108-9, 124.) Therefore, the instruction did not infect the entire trial with unfairness in violation of defendant's right to due process. The Appellate Division's determination was not contrary to or an unreasonable application of clearly established Supreme Court precedent. Ground Three of the petition is denied.

4.    Ground Four

     a.    The Parties' Arguments

Petitioner's fourth ground for relief is that the prosecutor committed prosecutorial misconduct in violation of his due process right to a fair trial by stating in the presence of the jury that Petitioner's testimony was rehearsed. (Pet., ECF No. 1 at 38.) The prosecutor asked Petitioner during cross-examination whether he had discussed his testimony with his attorneys before his trial testimony, and Petitioner responded "yes, he asked me what happened." (Id. at 38, ¶2.) In a sidebar, defense counsel asked for a curative instruction, arguing the question was not relevant. (Id. at 39, ¶¶3-4.) In response, the prosecutor said the relevance was that the testimony may be rehearsed. (Id., ¶4.) Defense counsel argued this was flagrantly improper. (Id., ¶5.)

Petitioner contends the following curative instructions by the court were insufficient to cure the improper, prejudicial remark by the prosecutor:

> Hold, stop. Members of the jury, it's not for you to guess what may have happened between attorney and the client. The only concern to you at this juncture is you're going to weigh the credibility of each witness for the testimony that they put on. You're going to compare it. As I've told you at the beginning instructions, there are factors that you can utilize in determining the weight and credibility given a witness' testimony given the factors I'm going to give you again.

> That's all that you should do. Again, that's
> all you should be concerned about.

(Pet., ECF No. 1 at 39, ¶5.) After a conference outside the
presence of the jury, the court instructed the jury:

> Members of the jury, there's absolutely no
> evidence in this case that any of the
> testimony of this witness or any other witness
> that has appeared before this Court has been
> rehearsed, and any reference to rehearsals
> should be disregarded completely.

(Id. at 40, ¶6.) Petitioner asserts the curative instructions were
insufficient to undo the prejudice of suggesting Petitioner's
testimony, the linchpin of his defense, was rehearsed. (Id., ¶7.)

Respondents assert the Appellate Division, on direct appeal,
reasonably held that this claim failed because the trial court
instructed the jury there was no evidence that any testimony was
rehearsed, and they should disregard any reference to rehearsal.
(Answer, ECF No. 11 at 66.) The Appellate Division also noted a
jury is presumed to follow a court's curative instruction. (Id. at
69.)

            b.   Analysis

The governing Supreme Court case on whether prosecutorial
misconduct violated a defendant's right to a fair trial is Darden
v. Wainwright, 477 U.S. 168 (1986). Parker v. Matthews, 567 U.S.
37, 45 (2012). "[A] prosecutor's improper comments will be held to
violate the Constitution only if they 'so infected the trial with
unfairness as to make the resulting conviction a denial of due

process.'" Id. (quoting Darden, 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). To warrant habeas relief, the state court's rejection of the prosecutorial misconduct claim must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Parker, 567 U.S. at 47 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

Clearly established Supreme Court law also creates a presumption that the jury will follow curative instructions:

> We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions . . . and a strong likelihood that the effect of the evidence would be devastating to the defendant.

Greer v. Miller, 483 U.S. 756, 766, n.8 (1987) (internal quotations omitted)

The Appellate Division found it was improper for the prosecutor to suggest in front of the jury that Petitioner's testimony was rehearsed. (Answer, Ex. Ra7, ECF No. 11-8 at 7-8.) However, the Appellate Division found there was no prejudice because the trial court instructed the jury that any reference to rehearsal should be disregarded completely and noted that a jury

is presumed to follow a court's instruction. (Answer, Ex. Ra7, ECF No. 11-8 at 8.)

The Appellate Division's Opinion is consistent with Supreme Court precedent. Petitioner's response to whether he talked to his attorneys about his testimony before trial was that he had talked to them because they asked him what happened. The trial court reinforced this innocuous response by stating there was absolutely nothing in the evidence that defendant's testimony or the testimony of any other witness was rehearsed. There is nothing about the circumstances here suggesting an overwhelming probability the jury could not follow the court's instruction. See Greer, 483 U.S. at 766, n. 8 (curative instruction that jury should disregard questions to which objections were sustained was sufficient.) Therefore, Ground Four of the petition is denied.

 5. <u>Ground Five</u>

 a. <u>The Parties' Arguments</u>

In Ground Five of the petition, Petitioner contends he was deprived of his constitutional due process right to a fair trial when a member of the victim's family had deliberate contact with jurors during trial. (Pet., ECF No. 1 at 40.) During a break from voir dire examination, Juror 9 reported to the court that a woman he knew from work, who turned out to be the victim's aunt, approached him and a small group of jurors on the street and told him that she was in the courtroom for her nephew Ron, and that she

46

saw Juror 9 in the courtroom. (Pet., ECF No. 1 at 41, ¶¶1-2.) Ron was the victim in Petitioner's trial. Juror 9 told the court this encounter might affect his decision-making because he might feel some pressure at work. (Id. at 41-42, ¶5.) Therefore, the judge excused Juror 9. (Id., ¶6.)

Several other jurors witnessed the contact between Juror 9 and the victim's aunt, although they had not paid much attention to it and felt they could be fair and impartial if they remained on the jury. (Id. at 42-44, ¶¶7-12.) The court did not dismiss any other jurors. (Id.) Defense counsel, however, moved for a mistrial, arguing that the unlawful contact of the jurors with the victim's family member removed the possibility for a fair trial. (Id.) The trial court disagreed and denied the request. (Id.)

The trial court gave the following instruction to the jury:

> Members of the jury, all are present and accounted for, you will note there is absent seat number 9. Juror in seat number 9 has been excused by this Court because of certain variable and factors that are really of no concern to the remainder of the jury. Needless to say, they weren't as a result of any improper behavior on the part of the defense. He was excused for certain variables and factors.

(Id. at 43, ¶13.)

Defense counsel argued the curative instruction was insufficient and increased the prejudice because the jurors were left to speculate on the reasons for dismissing Juror 9. (Id. at

47

44, ¶15.) Further, the trial court failed to instruct the remaining jurors who had contact with the victim's aunt not to discuss the matter with the other jurors and to not let it influence them. (Pet., ECF No. 1 at 44, ¶17.)

Respondents assert that Supreme Court precedent dictates the remedy for allegations of jury partiality is a hearing where the defendant may attempt to prove actual bias. (Answer, ECF No. 11 at 71, citing <u>Smith v. Phillips</u>, 455 U.S. 209 (1982)). The trial court must "determine the circumstances, the impact thereof on the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." (<u>Id.</u> at 72, quoting <u>Remmer v. United States</u>, 347 U.S. 227 (1954)).

Respondents contend the trial court made Petitioner aware of the contact between Juror 9 and a member of the victim's family, conducted a thorough investigation of the encounter and any impact on the jurors, and granted Petitioner's motion to excuse Juror 9. (<u>Id.</u> at 72.) The trial court conducted voir dire of Jurors 2, 8, 10, 12 and 13 to determine what they saw and heard. (<u>Id.</u> at 72-73.) These jurors said they could remain fair and impartial. (<u>Id.</u> at 73.) Thus, the court did not excuse them, and ordered the victim's aunt to sit away from the jury. (<u>Id.</u>)

Respondents contend any further instruction to these jurors would only draw more attention to an encounter that otherwise had no effect on them. (<u>Id.</u> at 73-74.) Respondents argue the Appellate

48

Division's decision that the trial court did not abuse its discretion was consistent with <u>Smith</u> and involved a reasonable determination of the facts. (<u>Id.</u> at 74.)

b.    The State Court Decision

On direct appeal, the Appellate Division addressed this claim as follows:

> [D]efendant made another motion for a mistrial after learning that one of the jurors worked with a relative of the victim, and that the two had met while the juror was on the way to the train at the end of the day. There is nothing in the record to support defendant's characterization of the meeting as "deliberate"; every indication is that the contact was wholly inadvertent. The trial court investigated the incident, and excused the particular juror in light of his statement that he might feel awkward returning to work if he participated in deciding this matter. The trial court inquired of the other jurors who were present at the time of the incident; its conclusion that they were unaware or unaffected by it is supported by the record. There was no abuse of discretion in denying the motion for a mistrial. <u>State v. Harvey</u>, [151 N.J. 117, 205 (1997) <u>cert. denied</u> 120 S. Ct. 811 (U.S.N.J. 2000)]; <u>State v. Winter</u>, 96 N.J. 640 (1984).

(App. Div. Opinion Nov. 21, 2000, ECF No. 11-8 at 7.)

c.    Analysis

The "most oft-discussed" Supreme Court precedent involving implied bias of a juror is <u>Smith v. Phillips</u>, 255 U.S. 209 (1982). <u>U.S. v. Mitchell</u>, 690 F.3d 137, 143 (3d Cir. 2012). In <u>Smith</u>, a juror in the petitioner's criminal trial submitted a job

application for an investigator to the District Attorney's Office during trial. Smith, 255 U.S. at 212. When the District Attorney's Office received the application, it was unaware the applicant was a juror in the criminal trial it was prosecuting. Id. The Office learned of this fact more than a week before the end of the trial and informed the two prosecuting attorneys. Id. The District Attorney investigated and informed the trial court and defense. Id. The trial judge held a hearing and concluded there was no prejudice. Id.

In Smith, the defense argued "a court cannot possibly ascertain the impartiality of a juror by relying solely upon the testimony of the juror in question," and that the court should impute bias to the juror. Id. at 215. The Supreme Court held that "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." Id. at 217. Due process is met when the trial judge employs safeguards such as voir dire and protective instructions. Id. The trial judge should determine through a hearing, with all interested parties permitted to participate, "the circumstances, the impact thereof upon the juror, and whether or not [the circumstances] were prejudicial." Id. at 216.

Based on the state court record, the Appellate Division's determination of facts was reasonable. Although the Appellate Division relied on state law in its decision, the record shows

that the trial judge did what was required by Supreme Court precedent in Smith v. Phillips, supra. The trial court held a hearing with participation of all interested parties. (ECF No. 11-50 at 3-46.) The trial court conducted a thorough investigation and determined whether the circumstances were prejudicial to the defense. (Id.) The record fully supports the reasonableness of the trial court's determination that only Juror 9 was potentially influenced by contact with the victim's family member, and Petitioner could receive a fair trial by excusing Juror 9 and instructing the remaining jury it was not the fault of the defense that Juror 9 was excused. Therefore, Ground Five of the petition is denied.

IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

For the reasons discussed above, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will deny a certificate of appealability.

V.    CONCLUSION

In the accompanying Order filed herewith, the Petition for habeas relief under 28 U.S.C. § 2254 is denied.

Dated: <u>July 26, 2018</u>

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**
